UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

T.E.C. ENGINEERING, INC,                                          Plaintiff

v.                                           Civil Action No. 3:25-cv-300-RGJ

PERATON INC., *et al.*,                                           Defendants

* * * * *

## MEMORANDUM OPINION AND ORDER

This case arises out of multiple agreements related to a potential bid for, and, subsequently, a subcontract to service, a project for the Commonwealth of Kentucky. Plaintiff T.E.C. Engineering, Inc. ("TEC") alleges that Defendant Peraton Inc. ("Peraton") solicited two of TEC's employees, Defendants Jon Colwell ("Colwell") and Turner Ray ("Ray," collectively with Peraton and Colwell, "Defendants"), in violation of the agreements, as well as state and federal unfair competition laws. Defendants move to dismiss for failure to state a claim [DE 25] and, separately, to enforce the forum-selection clause by dismissal, or in the alternative, by transferring the case to the Eastern District of Virginia, Alexandria Division [DE 26]. TEC responded [DE 30; DE 31] and Defendants replied [DE 34; DE 35].[1] These matters are ripe. For the reasons below, Defendants' Motion to Dismiss or Transfer Venue [DE 26] is **GRANTED in part and DENIED in part** and Defendants' Motion to Dismiss Plaintiff's First Amended Complaint [DE 25] is **DENIED without prejudice, as moot,** due to the transfer.

---

[1] TEC amended the original complaint [DE 1] as a matter of right in response to Defendants' original motions to dismiss and to enforce the forum-selection clauses [DE 16; DE 17]. Because those motions were filed before the First Amended Complaint ("FAC") [DE 21], these motions are **DENIED as moot**.

1

## I.    BACKGROUND

TEC is an engineering firm that offers engineering and support services with respect to Intelligent Transportation System ("ITS"). [DE 21 at 351]. ITS systems frequently include "the intelligent message boards" which appear on expressways, as well as "cameras, communication systems, fiber-optic cables, wireless and wired devices, radios and other components." [*Id.* at 351–52].

In 1997, the state selected the predecessor of Northrop Grumman Systems ("Northrop") to design and operate the "Traffic Response and Incident Management Assisting the River Cities" ITS system (the "TRIMARC Project") on a section of I-65 near Louisville, Kentucky. [*Id.* at 352].

In 2016, the Kentucky Transportation Cabinet issued an updated Request for Proposal ("RFP") for ITS services on the TRIMARC Project. TEC and Northrop entered into a "Teaming Agreement" to respond to the RFP. [DE 25 at 427; DE 21 at 375 (Compl. "Exhibit A")]. The Teaming Agreement contained a "Governing Law" provision providing that

> This Agreement shall be construed in all respects in accordance with, and any dispute arising hereunder shall be governed by, the substantive and procedural laws of Virginia except, however, that choice of law provisions shall not apply.

[DE 21 at 382]. Ultimately, the Kentucky Transportation Cabinet accepted Northrup and TEC's bid and they were re-awarded the TRIMARC project. [*Id.* at 354].

Northup and TEC then entered into a "Subcontract" to service the TRIMARC project. [*Id.*]. "The Subcontract tasked TEC with carrying out the implementation and maintenance of ITS services part of the TRIMARC Project." [*Id.* at 354–55]. In 2021, Peraton purchased Northup's ITS business, including its interest in the TRIMARC Project. [*Id.* at 355]. Subsequent amendments to the Subcontract identify the parties to the agreement as Peraton and TEC. [*See, e.g.,* DE 21 at 397 (Compl. "Exhibit D," amended version of Subcontract executed on September 2, 2022)].

## A.  Subcontract Material Terms

The Subcontract contains a merger clause providing that the agreement, "with all its incorporated and referenced terms, sets forth the entire agreement and supersedes any and all prior agreements of the parties[.]" [DE 21 at 398]. The Subcontract further states that "[t]he rights and obligations of the parties to this Subcontract shall be subject to, and governed by, the Schedule [and] the Subcontract clauses of Form ISF P1COM . . . ." [*Id. See also id.* at 413 ("ARTICLE XXVI" providing that "This Subcontract consists of the physically incorporated documents identified below," including "ISF P1COM, Subcontract Standard Terms and Conditions, Rev. 08/22/16")].

Form ISF P1COM, incorporated into the Subcontract by Article XXVI [*id.* at 413 (identifying ISF P1COM as the "Subcontract Standard Terms and Conditions")], contains the following mandatory forum selection clause:

> Each party hereto irrevocably and unconditionally (i) agrees that any suit, action or other legal proceeding rising out of or in connection with this purchase order shall be brought exclusively in the United States District Court for the Commonwealth of Virginia or, if such court does not have jurisdiction or will not accept jurisdiction, venue of any court of general jurisdiction in the County of Fairfax County, Virginia; (ii) consents to the jurisdiction and venue of any such court in any suit, action or legal proceeding; and (iii) waives any objection which such party may have to the laying of venue of any such suit, action or proceeding in any such court.

[DE 26-1 at 557]. [2]

---

[2] The Court may consider Form ISF P1COM without converting Defendants' motion to a motion for summary judgment because the Subcontract is "referred to in the complaint" and is "central" to TEC's claims. *Garnder v. Quicken Loans, Inc.*, 567 F. App'x 362, 364-65 (6th Cir. 2014) (citing *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999)). *Cf. Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) ("[A] defendant may introduce certain pertinent documents if the plaintiff fails to do so. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied.") (citation modified).

The Subcontract also contained a non-solicitation provision. [*See id.* at 406 ("Article IX – Key Personnel, Personnel and Non Solicitation of Personnel."). The agreement provided that "[n]either Party shall, during the term of this Agreement, without the advance written consent of the other, solicit for employment any person(s) employed by the other and working on the specific Task Order(s) covered by this Agreement." [*Id.* at 407].

### B.  Alleged Breach

On February 24, 2023, Peraton sent TEC a formal notice of Peraton's intent to terminate the Subcontract on June 30, 2023. [DE 21 at 358]. TEC alleges that "Peraton approached every one of TEC's employees working on the TRIMARC Project." [*Id.* at 361]. On June 19, 2023, two of TEC's employees—Ray and Colwell—with important roles on the TRIMARC Project tendered their resignations, effective June 30, 2023. [*Id.* at 362]. TEC also alleges that Ray and Colwell took certain proprietary information which they had obtained through their employment at TEC, including important documentation related to the TRIMARC project. [*Id.* at 365].

On June 30, 2023, TEC filed suit against Peraton in the Circuit Court for Fairfax County, Virginia, asserting claims of breach of contract, aiding and abetting breach of fiduciary duty, misuse and misappropriation of trade secrets, conspiracy, and tortious interference with contract or business expectancy. [DE 26-2 (the "Virginia Complaint")]. In relevant part, the Virginia Complaint stated that venue was proper "pursuant to . . . the Subcontract." [*Id.* at 560].[3]

Subsequently, TEC dismissed the action and refiled in this Court, adding Ray and Colwell as defendants. [DE 1].

---

[3] Federal Courts may take judicial notice of public records, such as dockets and proceedings in other courts. *See Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980).

## II.    STANDARD

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witness, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The moving party has the burden of showing that transfer to another forum is proper. *See Means v. U.S. Conference of Catholic Bishops*, 836 F.3d 643, 652 n.7 (6th Cir. 2016); *see also Boiler Specialists, LLC v. Corrosion Monitoring Servs., Inc.*, No. 1:12-CV-47, 2012 WL 3060385, at *2 (W.D. Ky. July 26, 2012) (collecting cases). When deciding whether to transfer a case, the court first considers whether the action could have originally been filed in the transferee district. *Payment All. Int'l, Inc. v. Deaver*, No. 3:17-CV-693-TBR, 2018 WL 661491, at *5 (W.D. Ky. Feb. 1, 2018) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)). If so, the court then considers "whether on balance, a transfer would serve 'the convenience of the parties and witnesses' and otherwise promote 'the interest of justice.'" *Atl. Marine. Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) (citing 28 U.S.C. § 1404(a)).[4]

However, when evaluating a § 1404(a) request for transfer premised on a valid, mandatory and enforceable forum selection clause, the § 1404(a) analysis changes. *Atl. Marine*, 571 U.S. at 63 ("The presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis . . . ."). In this situation, the plaintiff's choice of forum is given no weight and the plaintiff "must bear the burden of showing why the court should not transfer the case to the

---

[4] Courts within the Sixth Circuit have identified nine factors that the Court should consider in making this determination. These factors include 1) the convenience of witnesses; 2) the location of relevant documents and relative ease of access to sources of proof; 3) the convenience of the parties; 4) the locus of the operative facts; 5) the availability of process to compel the attendance of unwilling witnesses; 6) the relative means of the parties; 7) the forum's familiarity with the governing law; 8) the weight granted the plaintiff's choice of forum; and 9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Pharmerica Corp. v. Crestwood Care Ctr., L.P.*, No. 3:12-CV-00511-CRS, 2013 WL 5425247, at *1 (W.D. Ky. Sept. 26, 2013).

forum to which the parties agreed." *Id.* Additionally, "a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests." *Id.* Rather, the court is to evaluate public interest factors only. *Id.* When the parties have agreed to a valid forum selection clause, the district court should ordinarily transfer the case to the forum specified in the clause because "[i]n all but the most unusual cases, [ ] the interest of justice is served by holding parties to their bargain." *Id.* at 66.

Courts in the Sixth Circuit generally enforce forum selection clause unless there is a strong showing that the clause should be set aside. *Boling v. Prospect Funding Holdings, LLC*, 771 F. App'x 562, 567 (6th Cir. 2019). Courts ask whether the party opposing the forum selection clause can defeat the strong presumption of enforceability by showing that: (1) the clause was obtained by fraud, duress, or other unconscionable means; (2) the designated forum would ineffectively or unfairly handle the suit; (3) the designated forum would be so seriously inconvenient that requiring the plaintiff to bring suit there would be unjust; or (4) enforcing the forum selection clause would contravene a strong public policy of the forum state. *Lakeside Surfaces, Inc. v. Cambria Co., LLC*, 16 F.4th 209, 219–20 (6th Cir. 2021).

A valid forum selection clause in a contract may be enforced by dismissing a complaint under Rule 12(b)(6). *Langley v. Prudential Mortg. Cap. Co.*, 546 F.3d 365, 369 (6th Cir. 2008) (concurring opinion of J. Moore) ("When a party seeks to enforce a forum-selection clause through a properly brought motion to dismiss, the district court may enforce the forum-selection clause through dismissal."). *See also Security Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 371, 374– 76 (6th Cir.1999) (affirming the district court's dismissal pursuant to an unspecified subsection of Federal Rule of Civil Procedure 12(b) to enforce a forum-selection clause); *Wilson v. 5 Choices, LLC*, 776 F. App'x 320, 326 (6th Cir. 2019) (citing *Langley*, 546 F.3d at 366) ("This Court has

held that a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is a permissible way to enforce forum-selection and arbitration clauses.").

### III.    DISCUSSION

As a threshold matter, the Court must decide which of the pending motions to address first. As between the motion to dismiss or transfer venue [DE 26] and the motion to dismiss for failure to state a claim [DE 25], the Court proceeds with the venue motion in the interest of judicial economy. Before deciding the case on the merits, the Court ought to determine whether it is the appropriate venue for such a decision in the first place. *See, e.g., Pro REO Settlement Servs., LLC v. LendingTree, Inc.*, 780 F. Supp. 3d 749, 752–53 (N.D. Ohio 2025); *Showhomes Franchise Corp. v. LEB Sols., LLC*, 2017 WL 3674853, at *1 (M.D. Tenn. Aug. 24, 2017).

### C.  Forum Selection Clause

This Court applies Kentucky law to determine the validity of the underlying forum selection clause. *See Langley*, 546 F.3d at 368 (explaining that "[forum] law governs the initial question of whether the agreements containing the forum selection clauses were valid"). When interpreting whether the forum selection clause is applicable and mandatory, the Court will apply Kentucky's choice-of-law rules to select what state law governs the Subcontract. *See AtriCure, Inc. v. Meng*, 12 F.4th 516, 525 (6th Cir. 2021) ("In a diversity case, the choice-of-law rules of the state in which a district court sits . . . tell us the law to pick."). However, the Court will apply "federal common law—rather than state law—to determine the enforceability of a forum-selection clause." *Lakeside Surfaces, Inc.*, 16 F.4th at 219.

*1.  The forum selection clause is valid, mandatory and applicable to TEC's claims.*

Under Kentucky's choice of law principles, a contract is interpreted according to the law of the state that has the most significant relationship to the transaction and the parties. *State Farm*

*Auto. Ins. Co. v. Hodgkiss-Warrick*, 413 S.W.3d 875, 878–79 (Ky. 2013) (citing *Lewis v. Am. Family Ins. Grp.*, 555 S.W.2d 579, 581-82 (Ky. 1977) and Restatement (Second) of Conflict of Laws § 188(1) (1971)).

Here, there is no dispute that Kentucky is the state with the most significant relationship. [*See also* DE 34 at 659 (Defendants stating that "Kentucky substantive law applies to [TEC's] state-law claims under a traditional *Erie* analysis")]. Nor is there a conflicting choice-of-law provision. Although the Teaming Agreement specified that it "shall be governed by, the substantive and procedural laws of Virginia," [DE 21 at 382], the merger clause in the Subcontract "supersede[d] any and all prior agreements of the parties[.]" [*id.* at 398]. Accordingly, the Court applies Kentucky law when interpreting the Subcontract.

Likewise, there is no dispute that the forum selection clause is mandatory. Although TEC claims that "[t]he forum-selection clause should be set aside because it is not mandatory, valid and enforceable," [DE 31 at 642], TEC makes no attempt to argue that the language at issue is permissive, rather than mandatory. Indeed, the relevant forum selection clause states that "any suit, action or legal proceeding rising out of or in connection with" the Subcontract "*shall* be brought *exclusively* in the United States District Court for the Commonwealth of Virginia" or "any court of general jurisdiction in the County of Fairfax County, Virginia." [DE 26-1 at 557 (emphasis added)]. The word "shall" connotes mandatory language. *Gen. Elec. Co. v. G. Siempelkamp GmbH & Co.*, 29 F.3d 1095, 1099 (6th Cir. 1994). Further, the plain language of the provision explicitly notes that the contracted forum is to be the exclusive jurisdiction. Thus, the Court finds the forum selection clause to be mandatory.

Further, the forum selection clause is valid. TEC's argument that "[t]he subcontract referred to by Defendants is actually a purchase order with no signature lines for the parties to it"

is misplaced. Terms and conditions incorporated by reference are enforceable under Kentucky law. *Home Lumber Co. v. Appalachian Regional hospitals, Inc.*, 722 S.W.2d 912, 914 (Ky. Ct. App. 1987). When there is clear language expressing the incorporation of other terms and conditions and the signature follows afterward, "it is a logical inference that the signer agrees to be bound by everything incorporated." *Dixon v. Daymar Colleges Grp., LLC*, 483 S.W.3d 332, 344 (Ky. 2015) (quoting 11 *Williston on Contracts* § 30.25 (4th ed. 2014) (compiling cases from various jurisdictions)). Such is the case here. The forum selection clause was expressly incorporated into the Subcontract by reference to Form ISF P1COM, one of several "physically incorporated documents identified" on the page directly proceeding the signature page. [*See* DE 21 at 413–14 (identifying ISF P1COM as the "Subcontract Standard Terms and Conditions" )]. *Cf. Com-Serv, LLC v. ICE Indus., Inc.*, No. 3:18-CV-00123-GNS, 2018 WL 3543489, at *4 (W.D. Ky. July 23, 2018) (finding unpersuasive plaintiff's argument that terms and conditions explicitly incorporated into purchase orders were not reasonably communicated).

Having found the forum selection clause valid and mandatory, the Court must therefore determine whether the clause applies to TEC's claims. *See Diversified Metal Distributors, LLC v. AK Steel Corp.*, No. CIV.A. 6-55-KKC, 2007 WL 403870, at *2 (E.D. Ky. Feb. 1, 2007) ("[B]efore the Court can consider the forum selection clause in its analysis, it must first determine whether the clause even applies to Plaintiff's claims.").

To begin, the forum selection clause clearly applies to TEC's breach of contract claims against Peraton. Counts I and II of the FAC allege breaches of the Teaming Agreement and Subcontract, respectively. As discussed above, however, to the extent TEC's claims relate to the rights and obligations of the parties to the Teaming Agreement, the Subcontract "supersede[d] any and all prior agreements of the parties[.]" [DE 21 at 382]. Thus, any claims TEC may assert under

either agreement necessarily arise "out of or in connection with" the Subcontract and are subject to the mandatory forum selection clause. [DE 26-1 at 557]. On the other hand, TEC's remaining claims do not arise out of the Subcontract. TEC alleges a variety of unfair competition claims against Peraton, Ray and Colwell, including tortious interference with potential and current contractual relationships and misappropriation of trade secrets. [*See* DE 21 at 366–72].

Nevertheless, Defendants assert that the provision "applies to all of TEC's claims" and that "[a]ll of TEC's allegations against Colwell and Ray relate to the Subcontract and the claims against Peraton." [DE 26 at 533, 546]. In other words, Defendants argue that these claims arise in connection with the Subcontract.

The Sixth Circuit has observed that the phrase "arises out of or in connection with" is "very broad" and refers to two categories of claims. *Firexo, Inc. v. Firexo Grp. Ltd.*, 99 F.4th 304, 307 (6th Cir. 2024). "The narrower category includes terms such as 'arise out of,' 'arise from,' or 'arising under,' whereas the broader category includes terms such as 'in connection with,' 'relating to,' or 'associated with.'" *Id.* (quoting *Prod. Res. Grp., L.L.C. v. Martin Pro., A/S*, 907 F. Supp. 2d 401, 412 (S.D.N.Y. 2012) (citation modified). *See also Moses v. Bus. Card Exp., Inc.*, 929 F.2d 1131, 1140 (6th Cir. 1991) (forum-selection clause language such as "all of the rights and duties of the parties arising from or relating in any way to the subject matter of this contract" covers more than pure contract claims).

With respect to TEC's remaining claims against Peraton, the Court finds that the forum selection clause applies. Each claim arises in connection with TEC's alleged breach of the Subcontract—namely, Peraton's solicitation of Colwell and Ray. In relevant part, TEC alleges that it was "Peraton's *solicitations* of TEC employees" that

10

> were . . . intended to illegally and tortiously interfere with TEC's business relationships with its current employees and were also an intentional, willful and malicious misappropriation and continued attempt to misappropriate TEC's trade secrets.

[DE 21 at 364 (emphasis added)]. Indeed, all of "[t]he alleged actions and/or inaction of [Peraton] arose directly from its alleged conduct and misconduct in performing (or not performing) the services required under the [Subcontract]." *ecojiva, LLC v. S. Light Solar, LLC*, No. 20-12729, 2022 WL 15943676, at \*4 (E.D. Mich. Sept. 28, 2022) (finding forum selection clause applied when "[b]ut for the Agreement, there would be no relationship between Plaintiff and SLS").

Whether the clause applies to TEC's claims against Ray and Colwell—nonparties to the Subcontract—is less straightforward. As Defendants acknowledge, although courts sometimes hold that nonparties to agreements may benefit from and be subject to the parties' forum selection clauses, the Sixth Circuit has recently rejected the federal common law's "closely-related" test for determining whether a forum-selection clause applies to nonparties to a contract. *See Firexo, Inc.*, 99 F.4th at 327. [DE 26 at 544]. Instead, "a federal court sitting in diversity begins with a conflict-of-laws analysis using the law of the State in which it sits (here [Kentucky]) to determine the governing law, and then interprets the contract provision under that law." *Id.* Having already determined which states' law governs the Subcontract, the Court asks whether Kentucky law permits forum selection clauses to be applied to TEC's claims against Ray and Colwell.

Relevant here, Kentucky courts have recognized "[f]ive theories for binding nonsignatories to arbitration agreements. . . . (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel." *Olshan Found. Repair & Waterproofing v. Otto*, 276 S.W.3d 827, 831 (Ky. Ct. App. 2009). And Kentucky courts have treated arbitration agreements as "a subcategory of choice-of-forum provisions." *Fite & Warmath Const. Co. v. MYS Corp.*, 559 S.W.2d 729, 735 (Ky. 1977). *See also Moss v. Moss*, No. 2003-CA-001086-MR, 2004 WL 362324,

11

at *4 (Ky. Ct. App. Feb. 27, 2004) (defining a "forum selection clause" as a "clause in a contract preselecting a particular forum, such as a given state, country, court or administrative proceeding, for the resolution of a dispute") (quoting *Black's Law Dictionary*, 655 (6th ed. 1990)).

Defendants assert that the forum selection clause applies to Ray and Colwell under both "agency and estoppel" theories. [DE 26 at 545]. Under the estoppel theory, Defendants argue that TEC is estopped from denying that the claims against Ray and Colwell are subject to the forum selection provision because TEC has alleged "substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." [*Id.* (quoting *Hagan v. GreenPoint Credit Corp.*, No. 07-17-KKC, 2007 WL 2258866, at *8 (E.D. Ky. Aug. 3, 2007))]. Other courts applying Kentucky law have adopted *Hagan*'s reasoning. See *Household Fin. Corp. II v. King*, No. 2009-CA-001472-MR, 2010 WL 3928070, at *4 (Ky. Ct. App. Oct. 8, 2010) (holding that plaintiffs were bound by arbitration agreement where they "alleged 'substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract'" and quoting *Hagan*).

Under the circumstances presented, the Court is persuaded that applying the forum selection clause to TEC's claims against Ray and Colwell under an estoppel theory is consistent with the parties' agreement selecting Virginia as the appropriate forum for "any suit, action or other legal proceeding" arising "out of or in connection with" the Subcontract. [DE 26-1 at 557]. Having already found that the provision applies to TEC's claims against Peraton for Peraton's alleged concerted actions with Ray and Colwell, it follows that TEC's other claims arising from substantially the same operative facts must fall within its scope.

##### 2. *The forum selection clause is enforceable.*

TEC agrees that the *Lakeside* test governs the Court's analysis of the enforceability of the forum selection clause. [*See* DE 31 at 643]. The Court thus asks whether TEC can defeat the strong presumption in favor of enforceability by showing that (1) the clause was obtained by fraud, duress, or other unconscionable means; (2) the designated forum would ineffectively or unfairly handle the suit; (3) the designated forum would be so seriously inconvenient that requiring the plaintiff to bring suit there would be unjust; or (4) enforcing the forum selection clause would contravene a strong public policy of the forum state. *Lakeside Surfaces, Inc.*, 16 F.4th at 219–20.

TEC argues the clause is unenforceable under the first, third, and fourth *Lakeside* inquiries. However, each of TEC's arguments lack merit.

First, TEC argues that the forum selection clause is "the product of fraud or overreaching." [DE 31 at 645]. However, nowhere in the FAC does TEC allege "a well-founded claim of fraud in the inducement of the clause itself, standing apart from the whole agreement, to render [the forum selection clause] unenforceable." *Moses v. Bus Card Express*, 929 F.2d 1131, 1138 (6th Cir. 1991). Rather, TEC argues that the forum selection clause is procedurally unconscionable because the Subcontract and the purchase order were contracts of adhesion and that it is substantively unconscionable because "[t]he choice of venue clause is unreasonably favorable to Defendant Peraton to which Plaintiff did not assent nor did it have the opportunity to negotiate." [DE 31 at 644]. Neither assertion is supported by the allegations in the Complaint. TEC is a sophisticated business with nearly 30 years of experience contracting on the TRIMARC Project alone. [*See* DE 21 at 352 ("From [1997], TEC worked with Northup Grumman on the TRIMARC Project.")]. And as explained above, the Subcontract expressly incorporated the terms and conditions in Form ISF P1COM. "One who signs a contract is presumed to know its contents, and . . . if he has had an

13

opportunity to read the contract which he signs he is bound by its provisions." *Stout v. J.D. Byrider*, 228 F.3d 709, 715 (6th Cir. 2000) (quoting *Sears, Roebuck & Co. v. Lea*, 198 F.2d 1012, 1015 (6th Cir. 1952)). Even if TEC were unable to negotiate the forum selection clause—courts routinely uphold forum selection clauses even in contracts of adhesion. *See Lorenzana v. 2nd Story Software, Inc.*, No. 4:12CV-00021-JHM, 2012 WL 2838645, at *4 (W.D. Ky. July 10, 2012) (rejecting "argument that the forum selection clause is unenforceable because the User Agreement is an adhesion contract"). TEC has failed to meet its burden of showing that the forum selection clause is unconscionable or otherwise the product of fraud or overreaching.

Next, TEC argues that certain witnesses relevant to TEC's claims "are located in Kentucky or Southwest Ohio and for them to have to travel to Virginia for discovery depositions would severely inconvenience them." [DE 31 at 645]. TEC does not explain why the testimony of "non-party witnesses, such as Kentucky Department of Transportation employees and other subcontractors on the TRIMARC project" are necessary for its claims against Defendants. [*Id.*]. In contrast, it is evident that Virginia will be a convenient forum for many witnesses integral to TEC's claims, including Ray, Colwell, and other Peraton employees. Significantly, in as much as TEC claims that litigation in Virginia would result in financial hardship, the Sixth Circuit has recognized that "[u]nless all parties reside in the selected jurisdiction, any litigation will be more expensive for some than for others." *Moses*, 929 F.2d at 1139. According to the Sixth Circuit, this is not a reason for declaring such a forum selection clause invalid. *Id.* Without more, TEC cannot carry its "'heavy burden' of showing that enforcing this forum selection clause would be unjust or unreasonable." *Wong*, 589 F.3d at 829–830.

Finally, TEC argues that "both the Federal and [Kentucky] Uniform Trade Secrets Act demonstrate a strong public policy for protecting trade secrets against misappropriation," and thus

"the Federal District Courts in Kentucky are the appropriate venue for this lawsuit." [DE 31 at 646]. TEC is correct that "18 U.S.C. §1836(c) provides that the District Courts of the United States shall have original jurisdiction of civil actions brought under the Defend Trade Secrets Act." [*Id.*]. However, to the extent this statute evinces a policy preference for a federal forum, the forum selection clause, which gives priority to "the United States District Court for the Commonwealth of Virginia" as the appropriate forum, does not contravene that policy. [DE 26-1 at 557]. Likewise, to the extent that Kentucky has "a strong public policy in protecting trade secrets and to prevent their misappropriation," TEC has not show that transfer to Virginia would frustrate this goal. [DE 31 at 645]. "Kentucky's trade secret protection statute is nearly identical to the [federal Defend Trade Secrets Act]." *C-Ville Fabricating, Inc. v. Tarter*, No. 5:18-CV-379-KKC, 2019 WL 1368621, at *14 (E.D. Ky. Mar. 26, 2019). And, as Defendants note, "Virginia also enacted a trade secrets statute, the Virginia Uniform Trade Secrets Act, modeled after the federal Defend Trade Secrets Act." [DE 35 at 682]. Thus, whether under Kentucky or Virginia law, the Court sees no reason why a receiving court in Virginia would be unable to adjudicate TEC's unfair competition claims.

In sum, TEC has failed to overcome the strong presumption of enforceability afforded to the forum selection clause. *Lakeside Surfaces, Inc.*, 16 F.4th at 219–20. Having determined that the forum-selection clause is valid, mandatory, applicable, and enforceable, the Court must next determine "how to actually enforce the clause." *Kelly v. Liberty Life Assur. Co.*, No. 17-139-DLB, 2018 WL 558643, at *3 (E.D. Ky. Jan. 25, 2018).

### D. Appropriate Remedy

When enforcing a forum-selection clause, "this Court is permitted to dismiss the matter under Rule 12(b)(6), but not required to do so. Pursuant to 28 U.S.C. § 1404(a), it may also transfer

the matter to the appropriate federal forum." *Kelly*, 2018 WL 558643, at *4 (transferring the action to the Western District of Pennsylvania pursuant to § 1404(a) when the forum-selection clause required disputes to "be litigated in Allegheny County, Pennsylvania"). In *Kelly*, the court observed it would be "unfair . . . to wholly dismiss the matter and force [the plaintiff] to expend additional costs by refiling in the Western District of Pennsylvania." *Id.*

So too here. In the interest of justice, the Court finds that transfer, rather than dismissal, is the appropriate remedy to enforce the forum selection clause because TEC's claims may be time-barred if TEC were required to refile in Virginia. [*See* DE 25 at 431 n.4 ("Under Virginia law, a party that takes a nonsuit tolls the statute of limitations on its claims for six months so long as the party refiles the action within the six months. Va. Code Ann. §§ 8.01-380; 8.01-229(E). TEC did not refile in Virginia."). TEC has not shown that this case presents a set of circumstances which set it apart from "all but the most unusual cases" where "the interest of justice is served by holding parties to their bargain." *Atl. Marine*, 571 U.S. at 66.

Accordingly, the Court will transfer this case to the U.S. District Court for the Eastern District of Virginia pursuant to 28 U.S.C. § 1404. Defendant's motion to dismiss [DE 25] will be denied without prejudice, as moot, due to the transfer. *See Hatton v. Presidio, Inc.,* No. 22-11564, 2022 WL 16716215, at *4 (E.D. Mich. Nov. 3, 2022) (same).

### IV.   CONCLUSION

For the reasons above, and being otherwise sufficiently advised, **THE COURT ORDERS AS FOLLOWS**:

(1)   Defendants' Motion to Dismiss or Transfer Venue [DE 26] is **GRANTED in part and DENIED in part**. The motion is granted as to transfer but denied as to dismissal.

(2)      Defendants' Motion to Dismiss Plaintiff's First Amended Complaint [DE 25] is

**DENIED without prejudice, as moot**, due to the transfer.

(3)      Defendants' original motions to dismiss and to enforce the forum-selection clauses

[DE 16; DE 17] are **DENIED as moot**.

(4)      The Clerk of Court is directed to **TRANSFER** this matter to the U.S. District Court

for the Eastern District of Virginia

(5)      This matter is **TERMINATED**.

Cc: Counsel of record

17